UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEVON ANTHONY MURPHY,

        :   1:22 Civ. 5336

    Plaintiff,

        :   **COMPLAINT**

 -against-

        :   Plaintiff Demands a Jury

HOBO CONSTRUCTION COMPANY,
BULLFIGHTER CONSTRUCTION, INC., and  :
JESUS RICO,

        :

    Defendants.
------------------------------------------------------------X

  Plaintiff Devon Anthony Murphy, by his undersigned attorneys, as and for his complaint against defendants Hobo Construction Company, Bullfighter Construction, Inc., and Jesus Rico, alleges as follows:

  1. This is an action for compensatory and punitive damages, injunctive relief, and other remedies for failure to pay overtime rates of pay in violation of the Fair Labor Standards Act, ("FLSA"), ), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.*, and for race discrimination, a hostile work environment, retaliation, and wrongful termination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York State Equal Pay Law, N.Y. Labor Law § 194.

  2. Plaintiff Devon Anthony Murphy is a Black man. He was employed by the defendants to work on scaffolding in Brooklyn, Queens, and other parts of New York City for approximately six years. He is a resident of Kings County, New York.

3. Defendant Hobo Construction Company ("Hobo") is a corporation formed under the laws of the State of New Jersey with a principal place of business at 419 Lafayette Street, Second Floor, New York, New York.

4. Defendant Bullfighter Construction, Inc. ("Bullfighter") is a corporation formed under the laws of the State of New Jersey with a principal place of business at 237 West 14th Street, Suite B, New York, New York 10011.

5. Defendant Jesus Rico ("Rico") is the owner, President, and Chief Executive Officer of both Hobo and Bullfighter. Upon information and belief, he is a resident of New Jersey.

6. Defendant Rico dominated and controlled both Hobo and Bullfighter. He made all decisions based on what benefitted himself personally. He made no distinction between the two corporate entities or between himself and the corporate entities.

7. For example, defendants hired plaintiff to work for Hobo. All signage on the sites where plaintiff worked, and all hard hats and other equipment provided to plaintiff, displayed the Hobo name and logo. Defendants, however, paid plaintiff for his work for Hobo using checks drawn on the payroll account of Bullfighter.

8. Defendants paid plaintiff for up to 40 hours per week by giving him paychecks and paystubs.

9. Plaintiff worked more than 40 hours during many workweeks, including without limitation the workweeks ending on December 1, 2017, July 12, 2019, September 27, 2019, October 25, 2019, August 21, 202, March 26, 2021, April 9, 2021, April 16, 2021, May 14, 2021, September 24, 2021, November 12, 2021, November 19, 2021, December 3, 2021, and December 17, 2021.

10. Defendants paid plaintiff in cash at his regular rate of pay for the hours he worked in excess of 40 during these and other workweeks.

11. Defendants did not pay plaintiff one and one-half times his regular rate of pay for the hours he worked in excess of 40 during these and other workweeks.

12. At all times relevant to this complaint, defendants employed approximately 30 employees to work on scaffolding in Brooklyn, Queens, and other parts of New York City.

13. Plaintiff was the only Black person employed by defendants to work on scaffolding.

14. Upon information and belief, plaintiff was the only Black person employed by defendants in any capacity.

15. Plaintiff was frequently subjected to racist and discriminatory comments by his co-workers and supervisors.

16. On a project in Queens, one of plaintiff's co-workers repeatedly called him "Negro" instead of his name.

17. A foreman who worked for defendants on a project in Queens repeatedly made harassing and humiliating comments to plaintiff in Spanish, a language that plaintiff does not speak or understand. The harassing and humiliating comments made the other workers laugh at plaintiff. One of the comments the foreman directed at plaintiff was "chupa mi polla." Plaintiff later learned from a co-worker that this phrase means "suck my dick."

18. The same foreman was known to be a racist and to refuse to work with Black employees.

19. Plaintiff complained about the racist and harassing comments to another foreman who worked for the defendants.

20. The foreman promised to discuss the problem with Rico.

21. Defendants did nothing to stop the racist and harassing comments in the workplace.

22. Instead, a foreman told plaintiff the next day that Rico was starting to question plaintiff's work productivity.

23. Up until that point, no one had ever questioned plaintiff's work productivity.

24. Plaintiff understood from Rico's response that complaining about racist language or harassment in the workplace would cause problems.

25. Upon information and belief, Rico intended his response to send a message that complaints about racism or harassment in the workplace were not welcomed.

26. After plaintiff complained about the racist and harassing comments, the harassment only became worse.

27. The co-worker plaintiff complained about started taunting him by calling plaintiff "Blanco" instead of plaintiff's name. "Blanco" means "whitey" in Spanish.

28. Upon information and belief, the co-worker started calling plaintiff "Blanco" to send a message that the defendants were going to allow him to continue harassing plaintiff in the workplace with impunity.

29. Plaintiff was originally hired as a roofer with 10 years of experience. Over time, his responsibilities expanded to include roofing, patching, caulking windows, priming and painting on scaffolding.

30. During the course of his employment, plaintiff learned that he was paid much less than co-workers who were not Black and performed substantially similar work.

31. The non-Black workers who were paid more than plaintiff were responsible for patching, caulking windows, priming and painting on scaffolding.

32. In or about June 2022, plaintiff told Rico that he needed a raise.

33. Rico told plaintiff that he was a good worker, but that he had to think about a raise. Rico ultimately agreed to give plaintiff a $2.00 per hour raise. Even with a $2.00 per hour raise, plaintiff was still paid far less than co-workers who were not Black for substantially similar work.

34. Immediately after plaintiff asked for a raise, Rico began a campaign of harassment against him.

35. Rico began cursing at plaintiff and falsely accusing him of moving too slowly and not doing enough work. Rico also claimed that a foreman had complained about plaintiff, when that was not true.

36. Shortly thereafter, defendants terminated plaintiff's employment.

## FIRST CLAIM FOR RELIEF
## FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

37. Defendants have regulated the employment of plaintiff, acted directly and indirectly in their own interest in relation to plaintiff and other employees, and are thus employers of their employees within the meaning of section 3(d) of the Fair Labor Standards Act ("FLSA").

38. Defendant Rico at all relevant times was in active control and management of the corporate defendants, regulated the employment of plaintiff and all other persons employed by the corporate defendants, acted directly and indirectly in the interests of himself and the corporate defendants in relation to the employees, and thus is an employer of the corporate defendants' employees within the meaning of section 3(d) of the FLSA.

39. The business activities of the defendants, as described in this complaint, were related and performed through uniform operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the FLSA.

40. Defendants have employed employees at their places of business in activities of an enterprise engaged in commerce. The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00. Therefore plaintiff was at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

41. Defendants willfully and repeatedly violated the provisions of sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiff in an enterprise engaged in commerce, for workweeks longer than those prescribed in section 7 of the FLSA, and without compensating him for his employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which he was employed.

42. Defendants are liable for unpaid overtime compensation together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation together with prejudgment interest.

**SECOND CLAIM FOR RELIEF**
**FOR VIOLATIONS OF THE NEW YORK LABOR LAW**

43. Defendants' failure to pay plaintiff the proper overtime rates of pay violated New York Labor Law § 650, et seq. and 12 N.Y.C.R.R. § 142-2.2.

44. Defendants' failure to pay plaintiff the proper overtime compensation was intentional.

45. Defendants are liable to plaintiff for unpaid overtime wages together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation together with prejudgment interest.

### THIRD CLAIM FOR RELIEF
### FOR VIOLATIONS OF THE NEW YORK LABOR LAW
### AND WAGE THEFT PREVENTION ACT

46. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

47. Defendants did not furnish to plaintiff a statement with every payment of overtime wages, listing: the dates of work covered by that payment of wages; the name of the employee; the name of employer; the address and phone number of the employer; the regular and overtime rate or rates of pay and basis thereof; the gross wages; the number of regular hours worked; the number of overtime hours worked; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

48. Defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiff with the overtime wage statements required by Section 195(3) of the New York Labor Law.

49. Plaintiff is entitled to recover statutory damages of $250.00 per day for each day that defendants violated the overtime wage statements requirements of Section 195(3) of the New York Labor Law, up to a maximum of $5,000.00

### FOURTH CLAIM FOR RELEIF
### FOR VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW

50. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

51. Defendants' conduct constitutes race discrimination, a hostile work environment, retaliation, and wrongful termination in violation of the New York City Human Rights Law.

## FIFTH CLAIM FOR RELIEF
## FOR VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW

52. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

53. Defendants' conduct constitutes race discrimination, a hostile work environment, retaliation, and wrongful termination in violation of the New York State Human Rights Law.

## SIXTH CLAIM FOR RELIEF
## FOR VIOLATIONS OF THE NEW YORK STATE EQUAL PAY LAW

54. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

55. Defendants paid lower wages to plaintiff, a Black man, than they paid to employees who were not Black.

56. Plaintiff performed equal work as the non-Black employees on jobs requiring equal skill, effort, and responsibility.

57. The jobs of plaintiff and the non-Black employees were performed under similar working conditions.

## JURY DEMAND

58. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Devon Anthony Murphy demands judgment against defendants Hobo Construction Company, Bullfighter Construction, Inc., and Jesus Rico, jointly and severally, awarding him: (1) compensatory and liquidated damages for violations of the FLSA

8

and New York Labor Law; (2) compensatory and punitive damages for violations of the New York City and New York State Human Rights Laws; (3) compensatory damages for discriminatory pay differentials plus liquidated damages equal to 300 percent of the discriminatory pay differentials for willful violations of the New York State Equal Pay Law; (4) pre-judgment interest; (5) an injunction prohibiting defendants from discriminating or retaliating against plaintiff in the future; (6) an award of reasonable attorneys' fees and costs; and (7) such other relief as the Court deems just and proper.

Dated: New York, New York
September 8, 2022

THE HOWLEY LAW FIRM P.C.

By: /s John J.P. Howley
_____
John J.P. Howley
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
(212) 601-2728
jhowley@howleylawfirm.com